with United States v. Miguel Reyes, 14-2192. Mr. Urowitz. Good morning, Your Honor. May it please the Court. Although not the first issue raised by Reyes, I wanted to start my argument with the shackling issue because I think it highlights two significant points. What issue did you say? I'm sorry? What issue did you say? The shackling issue. Whether the defendant shouldn't have been shackled while he went to trial. First, despite the fact that this Court had issued its decision in Haines more than a year before this case went to trial, it seems, and Haines was a case that came out of the Northern District of New York, it seems that in the Northern District they believe that it doesn't apply to them because Well, that's not correct. they now know that it applies to them and there was a reference to Haines. There was an understanding that Haines required certain findings, and I take it that the missing words, for lack of a better term, were that this was necessary as a matter of last resort. Well, Judge Loyer, the problem, I think, is that from and the reason why I say the Northern District doesn't think that Haines applies to them is because based on the record it appears that shackling is the norm and unshackling is the exception because the facts in this case are no different from, in fact, they're more in favor of the defendant than in the case of Haines. We're talking about a defendant who had no criminal history, there's no evidence of violence in this case, there was no evidence of any guns, and he was facing a sentence less than the defendant in Haines. So that's why I say Is there any indication that the jury was aware that he was shackled? There's no indication from the record, but that just means, Judge Loyer, that at a minimum the case should be sent back for a fact-finding hearing. We've submitted authority that even without that, there is something inherently prejudicial to a defendant who's been shackled because it interferes with the presumption of innocence when you have a defendant that is shackled. Well, the jury doesn't. What troubled me is I couldn't picture this. Apparently there supposedly was a board, which was behind a chair, I'm trying to pick the visions in the courtroom, that supposedly covered his legs, but then his attorney says, I stood in front of that and suggesting that that might not have been adequate, and yet there's no, to my mind, that's the critical issue in the case. If the jury didn't see it, then the presumption of innocence is essentially what you charge the jury so that they can make a judgment about whether the government has met its burden of proof. But I don't buy that argument. I'm inclined to agree that he should not have been shackled. There was no finding and there couldn't have been any. But I don't see . . . The issue is the prejudice, and I couldn't figure out whether . . . I don't know how a board in front of a jury, in front of a table where the defendant was sitting and then they had to put a chair in front of the board and the defendant's lawyer says, I tried to stand in front of him. Well, that's precisely, Judge Corman, why I say at a minimum there should be a fact-finding hearing to make a determination. That's what other courts have done in this situation. And the fact that there is a board may cause the jury to wonder, why is there only a board, and why is the defense lawyer standing funny in front of him and there's nothing in front of the government's table? When you say fact-finding, we are at plain error. Is that correct? It is plain error, which leads into my . . . Well, either plain error or ineffective assistance of counsel because I think this is just one of many examples that I've highlighted in this brief, where you have a defendant, the government says they don't object to it. It's like they're begging him to say, don't shackle me, and the defense lawyer who just two minutes ago had heard about this practice for the first time says, it's not my practice to ask for a hearing. Why, on the ineffective assistance of counsel issue, why isn't this better disposed by way of a 2255? It could be disposed of by way of a 2255, but as in Haynes where there are so many issues in this case, we're talking about a defense counsel who from the start to the end, he never filed a notice of appeal, he never showed his client the PSR until the sentencing proceedings, and then when you move to the other two issues that are raised, the speedy trial issue, we're talking about a delay that's nine and a half years between indictment and arrest. Even the Supreme Court case, the leading Supreme Court case, Doggett, was a delay not as long as that, and for the government to suggest, oh, there was something strategic about the defense counsel not raising it, it's just when you look at the picture that's presented in this case, it's just unthinkable that he actually made an intelligible decision not to raise it. And just turning to the— I didn't see anything to indicate that there was ever an affidavit sought from this lawyer as to why he did any of these things. I agree with him. It's troubling that almost every issue in the case comes down to an ineffective assistance of counsel claim. And that's why I would say that if there is going to be a remand here, it should be a direct remand for further fact-finding hearing. If a 2255, in my experience, the defendant doesn't counsel immediately, there's delays associated with that. If there's a direct remand, it will permit counsel to continue. He'll have assigned counsel immediately. It will be dealt with faster. But the other thing is I don't think it needs a fact-finding hearing, particularly on the speedy trial claim, because the government offers no explanation and there is no evidence, and there's evidence to the contrary, that they did not conduct any diligent investigation. The court needn't look further than at A63 of the record. This is a cross-examination of the agent as to whether anybody had gone to the address. They had an address. This is like an investigator's dream. They have, supposedly, the culprit's address the day of the arrest. Nobody from he did not go, nobody from his office goes, and nobody from the local office, as far as he knows, went. So what diligent investigation was conducted in this case? None. And the government certainly had an interest if there was a diligent investigation. They were negligent or not competent, but that's not enough. I believe, Judge Corman, it is enough when— But there's evidence that suggests that, for example, that your client knew that his colleagues had been arrested and may not even have been in the country. There's only evidence, Your Honor, if you assume that this defendant is the defendant that was involved. There is evidence that somebody else was using his name, got deported under his name, and the agent testified in the grand jury. This is a rare case where you have the grand jury minutes. You see the agent says, this is a different— Miguel Reyes is an alias for somebody, Jose Contreras, and that's the person that was indicted. That raises the next issue. Why didn't defense counsel? We have a sworn statement. This is a case about mistaken identity. And in the grand jury, eight years before, the case agent testifies that it's somebody else that did the crime. If this doesn't amount to ineffective, I'm not sure what does. Thank you very much, Monsieur. Let's see if we have two minutes for rebuttal. May it please the Court, my name is Rajiv Dosanjh. I represent the government on this appeal. Just picking up where Reyes started with the shackling, the first thing to note is that the defense counsel here didn't really forfeit this claim. He waived it. He was asked, do you want to object, do you want to have a hearing? He said no. So that's—I can't think of a clearer waiver there. Well, but there's also an argument of ineffective assistance of counsel. This is a guy who first heard of this, what the judge characterized as a hearsay. He said he hadn't been practicing in federal court for three or four years. Can you say that this courtroom closing was justified? The shackling? The shackling, I'm sorry. Well, according to the judge, he had been informed by the marshals that they had concerns over his flight risk. I don't understand. He's in the courtroom with marshals. I haven't—I don't know if I've ever—maybe in 31 years I've had people shackled maybe once or twice because they thought they were a danger in the courtroom. But that's what the marshals are there for, to make sure he doesn't run out of the courtroom. I don't understand that. I mean, that theory you could have anytime you have a potentially fine guideline for injury. You shackle a defendant? Well, Your Honor, I think, again, because there was no hearing on this— Well, what would the hearing have developed? I mean, the judge said what he was relying on. I don't know what the hearing was. You heard the missing words that were not in the judge's finding, that this was essentially a last resort? This wasn't a last resort. This was a first resort. So if it was error, if it was deficient performance not to raise this, he still has to show prejudice. And in that case, it's very hard not to—I can't go out of the record, but I would ask the court to look carefully at the idea of the board being in front of the desk and those kind of things, because I think it's less clear that it was completely obvious to the jury, and I think there's no indication here. I told you where I indicated what troubled me. First of all, I'm trying to envision a board, which the judge said, and then there was a chair in front of the board, but then the defense counsel says, and I'll stand in front of him, and it's not clear to me. I can't envision the scene. The defense counsel also said, I will eject if this becomes an issue. And they were talking directly about the jury finding out. The judge was very concerned that the jury not see this. So there's really nothing in the record to suggest that the jury knew about it. But the cases that he raises where there's a kind of, you know, just a concern about the psychological effects or some kind of presumption here of prejudice, concern where there's visible shackling. These aren't cases involving a shackle that has been hidden from the jury. As I understand it, your point is that there's nothing in this record to indicate that the shackles were visible and that to the extent that there was an effective assistance of counsel, who we don't know who he was going to be, Dr. Haynes, then that's really something that should go by way of a 22-53. I think on this record, because the judge announced very clearly that he was going to be watching out for the fact that to prevent the jury from finding out, the attorney said, I will object if that becomes an issue. Where that issue was so front and center, I think the court could decide this on this record without requiring this to go to a 22-55. I thought in your brief, the government suggested that a 22-55 might be appropriate. For the first claim regarding a speedy trial. I ask you just out of curiosity, what's the difference in your mind between a remand for a hearing and a 22-55? Is there any practical distinction? Because you asked for it and you say it shouldn't be remanded, but we should not reach it without prejudice to a 22-55. What's the difference in your mind? In regards to the speedy trial. In any of them. I assume in all of these. Every issue here seems to me to be involved in a potential ineffective assistance of counsel claim. Your Honor, I think if you can decide the matter on the record, you can go ahead and do that. As far as remand versus a 22-55, this court in Doe, a case we cite in my brief, is a very thoughtful analysis of remand versus allowing a 22-55. Frankly, if you're going to allow more than one 22-55 claim to be brought, then it does make sense. I think the remand here, the strongest argument they have is that a remand would be necessary for the speedy trial claim. Then if you have a situation where he has one claim going ahead on a remand, then later brings another 22-55, the Doe court has suggested that that's not an efficient use of judicial resources. They should be all put into one. Just, again, on the issue of the speedy trial claim, I think here it's fairly obvious that even the case Doggett that is relied on so heavily by the defendant was based on a record that was developed specifically about the speedy trial issues and the Barker factors. That's an intensely factual issue that has to be raised. Here, of course, we don't have a sufficient record. No. You have some cross-examination testimony where I think neither side's real incentive was to explore these issues in full. You also have a situation where in a hearing setting where you're deciding this issue before trial, the defendant has a certain burden. In Gailani, this court's case decision in Gailani, when talking about the prejudice factor, they said they rejected the various claims of prejudice, saying they were not raised below and thus are not properly before us on appeal. Many of the claims are cursory or completely unsupported. That's what we have here. We have his claim that I was living openly in Pennsylvania, but that's based only on the fact that he renewed his license twice. In a situation where it could very well have been that he just didn't think the government knew his last name. Is this lawyer still receiving cases under the CJA? I'm sorry, what's that? Is the lawyer receiving cases under the CJA? Is he still on a CJA-eligible list? I don't know that, Your Honor. I could check on that and let the court know. That would be helpful. Can I ask you, reading this, do you think that he had the effective assistance of counsel forgetting about the prejudice prong of Strickland? Do you think that he had the effective assistance of counsel? I mean, you have a presumption of prejudice just on a speedy trial, and he doesn't raise it. I mean, each of these claims you're arguing is for plain error, and I just don't have a good feeling about it. Do you believe, forgetting about the prejudice prong of Strickland, that he had the effective assistance of counsel? It's very hard to know, Your Honor, if he— I mean, first of all, the speedy trial issue was raised a couple times before the trial. They entered into stipulations. It's hard to know if he had a strategic reason. I understand they had run out of stipulation for, I think, two 90-day steps so that they could prepare for trial. With or without that 180 days, it doesn't really affect the speedy trial. But it is still hard to know without— That wasn't my question. My question is, putting aside the second prong of Strickland, which is prejudice, is it your view, looking at this, that this defendant received the effective assistance of counsel? That even a reason of strategy that backfires or misfires or that is, frankly, somewhat suspect, that still, if it's a matter of strategy, that still is— You haven't answered my question. Because I can't, Your Honor. I don't feel I can answer that without—especially with the Speedy Trial Act claim— without learning what the attorney's thought process was. There was no affidavit here, obviously, because there was no hearing on that. So it's very hard to make a representation as to what I think a court would find, especially given the presumption that— I'm not asking for a recommendation. I'm asking for your opinion. Again, Your Honor, based on this record— You don't have an opinion. On this record, I can't give one. I feel I don't have the facts necessary. Mr. DeSantis, let me just return to the linguistries because I was on the panel. Mr. Silver was standing right where you're standing, and we made it very clear that, beyond our shock, that this was a routine matter in the Northern District of New York, that it shouldn't happen again, unless it was necessary as a matter of last resort. Can you represent to us that, since Haines, this is not happening on a routine basis, which is what I understood was the case in the Northern District before this? Unfortunately, I cannot make a representation because what happened in Haines is that we went outside the record, and things kind of devolved from there. So I can— Devolved is a charitable thing. I would also point out that Haines, I believe, was decided a month and a half only before trial. I don't think it was a year. But the judge was aware of it. It wasn't the judge's case. The judge was aware of an earlier decision with Judge Kearse from 10 years ago, I believe. So he may not have had the chance to read Haines. Haines was a different district court judge. I know for a fact that our attorneys, a month after Haines, or approximately a month after Haines, we had training on this, that kind of discussions of the Haines case. And again, I'm going outside the record, but if the court would like— Is shackling going on with any frequency in the Northern District now? Your Honor, I work in the appellate section, so I'm not a trial attorney to be able to give my own personal kind of anecdotal evidence of that. I could—we could figure out some way to try to find out, to survey. They gave us an update in a written submission within a week of today, so by next Monday. And particularly, what was— On the frequency of shackling, what sort of training has been conducted, for the U.S. Attorney's Office in connection with advising the district court judges in the Northern District of New York about Haines and so forth in the regard to this? Can I also check on the—whether he's—this attorney is still on the CJA? That's the second thing that you can add. But as I understand it, your main argument with respect to shackling is that there's no record that the shackling itself was visible, and so we don't have to—there doesn't have to be a separate 2255. That's right, and I think, again, because I think the judge, even though he had perhaps not read Haines, he was very concerned not to allow the shackles to be visible. Thank you very much. Thank you. Just to clarify for Judge LaValle, actually, in this case, the attorney—he may be on the panel, but in this case, my understanding is he was retained. So he's not—so the answer is one, he was retained. Apparently, yes. The other thing is the government is correct. I misread Haines was a month—about a month after—this trial was about a month after. It wasn't a year. I misread that. But to go back to what Judge Corman asked— the judge seemed to know that shackling was not something that should be done as a matter of course, which was the problem in Haines. I think because this judge was involved earlier, a decade earlier, but it still didn't change any of the practice, and that's the point, because the marshal—like I said, there's a presumption there, at least in this case, that there should be shackling, because there's nothing to indicate, even if you look at the judge's findings, there's nothing to indicate why he should be shackled. To go back to Judge Corman's question, yes, certainly putting aside the prejudice, there's no question that this defendant received ineffective assistance of counsel, and the notion that the assistant is trying to sort of waver and say, I'm not sure, when you're talking about a counsel that doesn't file a notice of appeal, that doesn't review the PSR with his client, that doesn't, when there's no objection from the government to shackling, say, no, I don't want shackling, and then there's a speedy trial issue where it's almost a decade later, and there's no issue, there's no hint about it, that it's raised, and I don't want to go out of the record, too, but I believe that this is an issue that's completely missed by the counsel, and then you have the issue of, you have clear grand jury testimony where another individual is identified, so certainly if you put aside prejudice, there's no question about it that Mr. Reyes, we're talking about a two-day record, and the errors that I just was able to list, it's clear that this defendant did not receive anywhere near competent counsel. Thank you very much, Mr. Yearowitz. What was your decision?